O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

ALVARO QUEZADA,

Petitioner,

v.

A. K. SCRIBNER, Warden,

Respondent.

Case No. CV 04-7532-RSWL (MLG)

ORDER GRANTING IN PART AND DENYING IN PART RESPONDENT'S MOTION TO DEPART FROM THE NINTH CIRCUIT MANDATE

**I. Background**

This case is before the Court on remand from the Ninth Circuit for an evidentiary hearing and additional proceedings. *See Quezada v. Scribner*, 611 F.3d 1165 (9th Cir. 2010). Petitioner Alvaro Quezada was convicted of first degree murder and conspiracy to commit murder, Cal. Penal Code §§ 182, 187, and is currently serving a sentence of life without the possibility of parole. The parties are familiar with the facts and lengthy procedural history of this case, (*see* Docket No. 47 at 1-3), and only the relevant portions will be repeated here.

//

The Ninth Circuit's remand order was issued during the pendency of an appeal from Senior District Judge Ronald S.W. Lew's November 21, 2007, judgment denying this petition for writ of habeas corpus. (Docket Nos. 47-50.) One of the grounds for relief was Petitioner's claim that the prosecution withheld exculpatory evidence about benefits provided to informant Joseph Aflague in exchange for his testimony at Petitioner's trial, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). In an October 26, 2007, Report and Recommendation, I concluded that Petitioner's *Brady* claim was likely subject to a procedural bar because the Los Angeles County Superior Court had denied Petitioner's state habeas corpus petition as untimely.[1] (Docket No. 47 at 37-38 & n.16.) However, given the uncertainty about whether California's timeliness bar was an independent and adequate state basis for denying collateral relief, *see Townsend v. Knowles*, 562 F.3d 1200, 1208 (9th Cir. 2009), *abrogated by Walker v. Martin*, ---- U.S. ----, 131 S.Ct. 1120, 1128 (2011), I addressed Petitioner's *Brady* claim on the merits without deciding if the claim was procedurally barred. (Docket No. 47 at 37-41.) The denial of Petitioner's *Brady* claim was based on the finding that Petitioner had failed to produce evidence establishing that the prosecution "withheld any information at all, let alone favorable evidence." (Id.) A certificate of appealability was granted on a different claim in the petition, but not on the *Brady* claim. (Docket No. 53.)

During appellate proceedings in the Ninth Circuit, Petitioner filed a motion to remand the petition based on newly discovered

---

[1] It should be noted that the petition was stayed from October 28, 2005, through May 25, 2007, so that Petitioner could return to the state courts to develop the *Brady* claim. (Docket No. 26, 31.)

evidence that money had in fact been given to Aflague for his cooperation with police. *Quezada*, 611 F.3d at 1166. On July 16, 2010, the Ninth Circuit remanded the case to this Court, finding that Petitioner was entitled to an evidentiary hearing under *Townsend v. Sain*, 372 U.S. 293, 313 (1963), because he had presented newly discovered evidence that he had been diligent in trying to obtain and which, if proven, would entitle him to relief:

> Quezada presents evidence that Aflague reported that from 1997 to 2007 he received between $9,000 and $25,000 for his cooperation with law enforcement. In a December 11, 2008, declaration, Aflague stated that, contrary to what was previously represented to the court, the relocation funds and compensation he received were not for his testimony in the *Eulloqui* case. He also indicated that he lied about his compensation while testifying in another case in 2007, because he was angry and frustrated with the defense attorney in that case. This satisfies the fourth prong of *Townsend*. *See id*.
>
> ...
>
> The evidence allegedly withheld by the state in this case is favorable impeachment evidence involving a key government witness. The evidence indicates that the government never informed Quezada or his counsel of substantial compensation that the government paid to Aflague, the only witness that linked Quezada directly to the murder of Bruce Cleland.
>
> ...
>
> The evidence also indicates that this witness, Joseph Aflague, has previously perjured himself, in this case or another case, regarding the compensation that he received from

the government.

*Quezada*, 611 F.3d at 1167.

The Ninth Circuit noted that Respondent did not deny the allegations regarding the newly discovered evidence, “but instead assert[ed] that remand is inappropriate because Quezada’s claim is procedurally barred. The government argues that Quezada must seek leave to file a successive habeas petition. There is no support for this contention. *Townsend* mandates an evidentiary hearing.” *Id*. Accordingly, the Ninth Circuit remanded the petition for an evidentiary hearing to:

> [1] determine the admissibility, credibility, veracity, and materiality of newly discovered evidence, […and then] [2] determine whether the new facts render Petitioner's Brady claim unexhausted, […and then] [3] consider whether Petitioner is procedurally barred from proceeding in state court, […] [4] if [Petitioner] is not procedurally barred, the court should stay and abey federal proceedings so that Petitioner may exhaust his claims in state court, […] [5] if [Petitioner's] claim is procedurally barred, the district court should proceed to determine whether [Petitioner] can show cause and prejudice or manifest injustice to permit federal review of the claim.

*Id*.

On remand, the Federal Public Defender was appointed to represent Petitioner, and on August 26, 2010, the parties’ entered into a stipulation for discovery in preparation for the evidentiary hearing. (Docket Nos. 59, 66, 68.) The Court resolved one discovery dispute, but discovery otherwise proceeded without incident until May 2, 2011, when

Respondent filed a motion to stay discovery pending resolution of his motion in the Ninth Circuit to recall the mandate based on the United States Supreme Court decisions in *Cullen v. Pinholster*, ---- U.S. ----, 131 S.Ct. 1388 (Apr. 4, 2011) and *Walker v. Martin*, ---- U.S. ----, 131 S.Ct. 1120 (Feb. 23, 2011). Discovery was stayed on May 24, 2011. (Docket Nos. 81, 86.)

On June 16, 2011, the Ninth Circuit denied Respondent's motion to recall the mandate, but indicated that Respondent was "free to argue to the district court that [*Pinholster*] is intervening controlling authority that requires the district court to depart from the mandate of this court." (Docket No. 89, Ex. A.) On June 24, 2011, Respondent filed a motion to depart from the mandate in this Court, and on July 22, 2011, Petitioner filed an opposition. (Docket Nos. 92, 94.) Argument on the motion was heard on August 2, 2011.

## II. Standard of Review

A decision on whether to depart from the mandate of an appellate court is generally evaluated under the law of the case doctrine. *See e.g., Lindy Pen Co., Inc. v. Bic Pen Corp.,* 982 F.2d 1400, 1404 (9th Cir. 1993). In the Ninth Circuit, "'The law of the case doctrine states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case.'" *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 281 (9th Cir. 1996) (quoting *Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993)); *see also Thompson v. Paul*, 657 F.Supp.2d 1113, 1120 n.5 (D. Ariz. 2009) (explaining discretionary nature of the doctrine: "The difference between the law of the case and res judicata is that 'one directs discretion, the other supersedes it and compels judgment.'") (quoting

*United States v. Miller*, 822 F.2d 828, 832 (9th Cir. 1987)). An exception to this rule applies when "intervening controlling authority makes reconsideration appropriate." *Rainbow*, 77 F.3d at 281. Intervening controlling authority "includes changes in statutory as well as case law." *Jeffries v. Wood*, 114 F.3d 1484, 1489 n.1 (9th Cir. 1997), overruled on other grounds by *Lindh v. Murphy*, 521 U.S. 320 (1997). Thus, this Court must determine whether intervening Supreme Court precedent, specifically *Pinholster*, 131 S.Ct. 1388, or *Walker*, 131 S.Ct. 1120, warrants departure from the Ninth Circuit's order.

**III. Analysis**

Respondent first contends that the Court should not allow evidentiary development because *Pinholster* precludes consideration of new evidence not presented to the state courts in its 28 U.S.C. § 2254(d)(1) analysis. (Resp't's Mot. to Depart From The Mandate ("Resp't's Mot.") at 2-5.) He contends that Petitioner's claim should be dismissed on the merits without further proceedings. (Id.) Second, Respondent argues that *Walker* makes it clear that Petitioner's claim is procedurally defaulted, which provides the Court with an independent reason to dismiss Petitioner's *Brady* claim without the factual development contemplated in the Ninth Circuit's remand order. (Resp't's Mot. at 11.)

In response, Petitioner concedes that the *Brady* issue was not addressed on the merits by the superior court. He agrees that the state court petition was denied because it was untimely, an independent state procedural ground, and that the *Brady* claim is therefore subject to the argument that it is procedurally barred. However, Petitioner contends this renders *Pinholster* inapplicable to Petitioner's case, because

*Pinholster* only applies to claims adjudicated on the merits by the state court, and *Walker* demonstrates that the state court decision was not on the merits. (Pet'r's Opp. at 8-9.) More specifically, Petitioner argues that *Walker* requires a finding that the Los Angeles County Superior Court's reliance on California's timeliness bar in rejecting his *Brady* claim was an independent and adequate state procedural ground for decision, which precludes federal review of the claim in this Court unless he can demonstrate cause and prejudice. (Id. at 6-10.) Petitioner further argues that the Ninth Circuit mandate makes clear that he has presented sufficient evidence to warrant a hearing on his ability to overcome the procedural bar by demonstrating cause and prejudice, making departure from the mandate and dismissal of the petition inappropriate. (Pet'r's Opp. at 10-12.)

The Court agrees with Petitioner that under *Walker,* his *Brady* claim is procedurally barred unless he can demonstrate cause and prejudice. But, if he can show cause and prejudice for the procedural default, *Pinholster* would not be applicable to this petition because the *Brady* claim was not addressed on the merits by the state courts.

**A. *Cullen v. Pinholster***

In *Pinholster*, 131 S.Ct. 1388, the Supreme Court reversed the Ninth Circuit's grant of a capital habeas corpus petition based on ineffective assistance of counsel during the penalty phase of trial. In granting the petition, the Ninth Circuit considered evidence outside the state court record to conclude that the state court unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984), in denying relief. *Id.* at 1397. The specific questions before the Supreme Court were (1) "whether review under 28 U.S.C. 2254(d)(1) permits consideration of evidence introduced in an evidentiary hearing before

the federal habeas court," and (2) "whether the [Ninth Circuit] properly granted Pinholster habeas relief on his claim of penalty-phase ineffective assistance of counsel." *Id.* at 1398. Regarding the first question, the California Attorney General argued that review under § 2254(d)(1) is limited to the evidence before the state court that adjudicated the claim on the merits, and the Supreme Court agreed: "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits," because the statutory language of § 2254(d)(1) is written in the past tense, and the "broader context of the statute as a whole...demonstrates Congress' intent to channel prisoners' claims first to state courts." *Id.* at 1398-99.

Practically, this holding imposes a significant limitation on federal district courts' ability to hold evidentiary hearings: if the §2254(d)(1) analysis is limited to the state court record, the reasons for federal courts to develop facts not presented to the state court are substantially limited. Similarly, because discovery in habeas proceedings is only justified upon a showing of good cause, *Pinholster's* limitation on evidentiary hearings has consequences for discovery in habeas cases. *See, e.g., Lewis v. Ayers*, 2011 WL 2260784, at *7 (E.D. Cal. June 7, 2011) (taking previously ordered evidentiary hearing off calendar and suggesting no discovery is available until after a petitioner survives the § 2254(d)(1) analysis: "[H]ow could a district court ever find good cause for federal habeas discovery...if it could not be put to use in federal court at an evidentiary hearing or otherwise[?]").

//

However, the *Pinholster* Court explicitly noted that its holding

only applied to habeas corpus claims that "fall within the scope of § 2254(d)," meaning claims adjudicated on the merits in state court proceedings. *Pinholster*, 131 S.Ct. at 1400-01. The *Pinholster* Court was clear that its holding did not reach claims that were not adjudicated on the merits in state court. *Id*. For claims not adjudicated on the merits in state court, such as claims subject to a procedural bar, 28 U.S.C. § 2254(e)(2) continues to govern district court discretion to consider new evidence in habeas corpus cases. *Id*. Accordingly, the question previously deferred by this court, whether or not Petitioner's *Brady* claim is subject to a procedural bar, must be answered in determining whether *Pinholster* controls this case and justifies departure from the Ninth Circuit's remand order.

**B. *Walker v. Martin***

Although California does not specify exact time limits on collateral review, California courts have developed a discretionary timeliness doctrine that requires prisoners to seek collateral review "as promptly as circumstances allow" and "without substantial delay," subject to four exceptions. *See In re Clark*, 5 Cal.4th 750, 765 n.1, 797-98 (1995); *In re Robbins*, 18 Cal.4th 770, 780, 811-12 (1998). In *Walker*, 131 S.Ct. 1120, the United States Supreme Court concluded that California's timeliness requirement constitutes an independent and adequate state procedural basis for decision that bars federal review absent a showing of cause and prejudice or a fundamental miscarriage of justice. *Id*. at 1125, 1128-30 (citing *Coleman v. Thompson*, 501 U.S. 722, 731 (1991) and *Wainwright v. Sykes*, 433 U.S. 72, 84-85 (1977)). The *Walker* Court reasoned that although the California timeliness requirement is discretionary, it is both firmly established and regularly followed. *Id*.

**C. Analysis**

Without question, *Pinholster* and *Walker* have significant consequences for habeas corpus petitioners in federal court. However, *Pinholster* and *Walker* generally apply to distinctly different types of cases, and most federal habeas corpus petitioners will not be impacted by both decisions. This is because *Pinholster's* restriction on consideration of evidence outside the state court record only applies to petitions adjudicated on the merits by the state court, and *Walker* only applies to California prisoners whose state habeas corpus petitions were rejected by California courts based on the state law procedural ground of untimeliness. In other words, unless a California court rejects a petitioner's claims by making alternative findings on the merits and on procedural grounds, *Pinholster* and *Walker* will not apply simultaneously to the same federal petition. Determining whether Petitioner's *Brady* claim was adjudicated on the merits or rejected on state procedural grounds, or both, is critical to deciding whether to depart from the Ninth Circuit mandate in this case.

Although I previously determined that Petitioner's *Brady* claim was "likely" subject to a procedural bar, (Docket No. 47 at 38 n.16), I declined to conclusively decide the issue because, at that time, it was unclear whether California's timeliness rule was an adequate state law basis for imposition of a procedural bar. *See Townsend*, 562 F.3d at 1208. *Walker* resolved the uncertainty, and it is now necessary to determine the exact basis for the state court's rejection of Petitioner's *Brady* claim.

The California Supreme Court and California Court of Appeal summarily rejected Petitioner's *Brady* claim, and this Court is required to look to the Los Angeles County Superior Court's reasoned decision

rejecting Petitioner's *Brady* claim as the basis for the California Supreme Court decision. *See Mendez v. Knowles*, 556 F.3d 757, 767 (9th Cir. 2009)(citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)). On February 21, 2006, the Los Angeles County Superior Court, *inter alia*, summarized Petitioner's *Brady* claim involving alleged payments to Aflague, described Petitioner's evidentiary burden on habeas corpus, and then moved to a timeliness determination:

> **Timeliness**
>
> Petitioner contends that he has met a timeliness exception by virtue of the recent discovery of new evidence. His description of the circumstances surrounding this discovery is dubious and unconvincing. If the Court assumes, *arguendo*, that this vague contrivance is accurate, it still remains for the "new" evidence to qualify for a timeliness exception. "For purposes of the exception to the procedural bar against successive or untimely petitions, a 'fundamental miscarriage of justice' will have occurred in any proceeding in which it can be demonstrated: (1) that the error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner...' (*In re Clark* (1993) 5 Cal.4th 750, 761.) Ordinarily, evidence which merely serves to impeach a witness is not sufficiently significant to warrant a new trial. (*People v. Long* (1940) 15 Cal.2d 590, 607-08.) As discussed subsequently, Petitioner fails to demonstrate the "constitutional magnitude" necessary to be granted an exception. This petition is not timely.
>
> **Alleged Brady Violations and False Testimony**

> Petitioner cites *Napue v. Illinois* (1959) 360 U.S. 264, to justify his allegations regarding both *Brady* violations and Aflague's purported false testimony. For *Napue* to apply, it must be clear that the prosecutor at trial not only knew of an arrangement for consideration between state agents and the informant witness, but allowed false testimony to the contrary to be brought into court.
>
> Petitioner bases his complaint on an unproven undisclosed agreement between the state and Aflague whereby he would avoid prosecution for his ongoing or past crimes, in exchange for his testimony against [Petitioner]. Petitioner proceeds on the theory that an arrangement must exist; therefore, both Aflague's denial and the prosecutor's 'failure' to produce evidence of such arrangement constitute errors. Petitioner fails to provide credible evidence of such an arrangement and fails to make a prima facie case supporting these allegations. (*In re Crow* (1971) 4 Cal.3d 613, 624.).

(Lodgment 7 to First Am. Pet. ("FAP") at 3-5.) The superior court went on to discuss Petitioner's allegation that the prosecutor allowed Aflague to testify falsely, and discussed alleged errors relating to other witnesses before concluding: "For the reasons stated above, Petitioner has failed to meet his burden. The Petition for Writ of *Habeas Corpus* is denied." (Lodgment 7 to FAP at 9.)

Respondent contends that the decision represents the superior court's rejection of Petitioner's *Brady* claim both on the merits, requiring review under 28 U.S.C. § 2254(d), and as untimely, resulting in a procedural bar that precludes federal review unless Petitioner demonstrates cause and prejudice. (Resp't's Mot. at 1.) He contends

that this Court's prior rejection of Petitioner's *Brady* claim involved a conclusive and unreviewable determination that the state court decision was on the merits. (Resp't's Mot. at 3.) However, in the Report and Recommendation, I explicitly declined to decide whether the state court's decision was based on an independent and adequate state procedural rule, and instead addressed with the merits because it was legally permissible and a simpler basis for decision.[2] (*See* Docket No. 47 at 37-41.) Given the speculative nature of Petitioner's *Brady* claim at that time, I found that the claim was "clearly without merit" such that it could be denied without deciding the procedural bar issue.

In light of the decision in *Walker*, I agree with Petitioner that the Los Angeles County Superior Court's denial of the habeas corpus petition rested on its untimeliness under state law. The superior court judge explicitly said so. Moreover, the superior court's review of the facts underlying the *Brady* claim does not transform the decision to one on the merits. As noted, under California law, a prisoner whose claim on habeas review is found to be untimely may still be entitled to review on the merits if he shows that a state law exception applies by demonstrating:

> (1) that error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner; (2) that the petitioner is actually innocent of the crime or crimes of which he or she was convicted; (3) that the death

---

[2] *See Lambrix v. Singletary*, 520 U.S. 518, 524 (1997) (where it is easier to resolve a petitioner's claims on the merits, the interests of judicial economy counsel against deciding the often more complicated issue of procedural default); *Walters v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995).

> penalty was imposed by a sentencing authority that had such a grossly misleading profile of the petitioner before it that, absent the trial error or omission, no reasonable judge or jury would have imposed a sentence of death; or (4) that the petitioner was convicted or sentenced under an invalid statute.

*Robbins*, 18 Cal.4th at 780-81, 811 (quoting *Clark*, 5 Cal.4th at 797-98). Here, the superior court considered whether Petitioner's claim fell within the first listed exception, and concluded: "As discussed *subsequently*, Petitioner fails to demonstrate the 'constitutional magnitude' necessary to be granted an exception. This petition is not timely." (Lodgment 7 to FAP at 4) (emphasis added).

This demonstrates that the superior court's discussion of Petitioner's *Brady* claim involved a determination about whether Petitioner had demonstrated entitlement to the "constitutional magnitude" exception to the timeliness bar. And, as Petitioner correctly argues, the California Supreme Court has made clear that when a California court considers the applicability of that exception, it does so only by reference to state law and does not consider the merits of the petitioner's federal claim:

> Although the exception is phrased in terms of error of constitutional magnitude-which obviously may include federal constitutional claims-in applying this exception and finding it inapplicable we shall, in this case and in the future, adopt the following approach as our standard practice: We need not and will not decide whether the alleged error actually constitutes a federal constitutional violation. Instead, we shall assume, for the purpose of addressing the procedural

> issue, that a federal constitutional error is stated, and we shall find the exception inapposite if, based upon our application of state law, it cannot be said that the asserted error "led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner."

*Robbins*, 18 Cal.4th at 811-12. The California courts do not consider the federal constitutional merits in this context in order to preserve the independence of the state procedural bar. *Id*. at n.32. ("We are aware that federal courts will not honor bars that rest 'primarily' on resolution of the merits of federal claims, or that are 'interwoven' with such claims...As explained in the text above and following, whenever we apply the first three *Clark* exceptions, we do so exclusively by reference to state law.")(internal citations omitted). Accordingly, the superior court's conclusion that Petitioner's *Brady* claim did not fall within the first exception to California's time-bar rested solely on state law grounds and did not address the merits of Petitioner's *Brady* claim under federal law.

Respondent argues that the superior court decision should be viewed as containing two alternate rulings, one on procedural grounds and one on the merits. At the hearing, Respondent asserted that the basis for viewing the decision as containing two alternative holdings is that state courts do so "all the time." However, the specific language in the state court order must be examined in deciding the basis for decision. Given the superior court's explicit language, it is clear that the petition was found to be untimely and that Petitioner's *Brady* claim did not fall within *Clark's* first exception to untimeliness. There was no alternative basis for decision in the

superior court's opinion. This conclusion is supported by the state court's near exclusive reference to state law in accordance with the principles announced in *Robbins*. Although the superior court referenced *Napue v. Illinois*, 360 U.S. 264 (1959), when it described Petitioner's arguments, it otherwise relied exclusively on California cases. (*See* Lodgment 7 to FAP.) For these reasons, I conclude the court rejected Petitioner's *Brady* claim on the basis of untimeliness only.

Under these circumstances, Petitioner's claim is procedurally barred unless he can demonstrate "'cause for the default and actual prejudice as a result of the alleged violation of federal law.'" *Vansickel v. White*, 166 F.3d 953, 958 (9th Cir. 1999) (quoting *Coleman*, 501 U.S. at 750). In order to demonstrate cause for a procedural default, "a petitioner must demonstrate that the default is due to an external objective factor that 'cannot fairly be attributed to him.'" *Smith v. Baldwin*, 510 F.3d 1127, 1146 (9th Cir. 2007) (citing *Manning v. Foster*, 224 F.3d 1129, 1133 (2000) and *Coleman*, 501 U.S. at 753). In order to demonstrate prejudice as a result of the default, Petitioner must demonstrate there is a "reasonable probability" of a different outcome absent the constitutional violation. *Id*. at 1148; *see also Strickler v. Greene*, 527 U.S. 263, 290 (1999).[3] Respondent contends, without citation, that Petitioner is not entitled to factual development to overcome the procedural bar with evidence developed for the first time in federal court. (Resp't's Mot. at 11 n.6.) There is no support for this assertion. To the extent Respondent is asserting that *Pinholster* precludes consideration of new facts in the cause and

---

[3] The Court is cognizant that demonstrating cause and prejudice to overcome a procedural bar of a *Brady* claim parallels the suppression and materiality elements of a successful *Brady* claim. *See Strickler*, 527 U.S. at 282.

prejudice analysis, Respondent is wrong because *Pinholster's* prohibition on consideration of new evidence only applies to claims "adjudicated on the merits." *Pinholster*, 131 S.Ct. at 1400-01. Indeed, at least one court since the *Pinholster* decision has concluded that federal court evidentiary hearings may be warranted in determining whether a petitioner can overcome a procedural bar. *See United States ex rel. Brady v. Hardy*, 2011 WL 1575662, at *1-3 (N.D. Ill. Apr. 25, 2011) (granting in part the state's motion for reconsideration of evidentiary hearing order and ruling that the evidentiary hearing previously ordered would only address whether the petitioner could overcome a procedural bar by demonstrating actual innocence). I agree with this analysis, and given that the Ninth Circuit already determined that Petitioner has consistently been diligent, *see* 28 U.S.C. § 2254(e)(2), factual development on cause and prejudice is appropriate in this case.

In sum, the *Walker* and *Pinholster* cases change the complexion of this case, albeit not dramatically. *Walker* supplied the intervening controlling authority that affects Petitioner's *Brady* claim and clarifies that the superior court's timeliness ruling was based in an independent state procedural rule. The Ninth Circuit directed this Court to conduct an evidentiary hearing to determine whether there was a *Brady* violation. But it also directed the Court to determine whether the *Brady* claim was procedurally barred, and if so, whether there existed cause and prejudice which excuses state procedural default. Having determined that the procedural bar is applicable, the next step is an evaluation of whether there was cause for the failure to adhere to the state procedures and prejudice arising from the imposition of the bar. *Pinholster* does not apply to the cause and prejudice

evaluation. A petitioner may overcome a procedural bar by presenting new evidence on the issues of cause and prejudice even in *Pinholster's* wake. *See Hardy*, 2011 WL 1575662, at *1-3.

For these reasons, a limited departure from the Ninth Circuit mandate is justified. The petition will not simply be denied with prejudice, either under § 2254(d) review or based on a procedural bar, as Respondent urges. However, to the extent the Ninth Circuit's remand order contemplated development and introduction of new evidence for the purpose of resolving Petitioner's *Brady* claim under § 2254(d)(1), the Court will depart from the mandate. This is because no § 2254(d)(1) analysis is warranted under AEDPA, given that the state court's ruling rested solely on an independent and adequate state law ground.

However, that does not end the inquiry, as Petitioner's claim is subject to a procedural bar unless he can demonstrate cause and prejudice. Such a procedure was contemplated by the Ninth Circuit's order, and the Court will not depart from that portion of the mandate. Instead, Petitioner may use the new evidence presented to the Ninth Circuit and adduced in discovery in attempting to overcome the procedural bar.

//

//

//

//

//

//

//

//

//

Whether additional discovery is necessary to litigate the cause and prejudice issue will be determined at a future status conference.[4]

Dated: August 19, 2011

MARC L. GOLDMAN

Marc L. Goldman
United States Magistrate Judge

[4] It is premature to determine whether Petitioner's newly discovered evidence renders his *Brady* claim unexhausted. Once the Court is informed of the exact nature and scope of the newly discovered evidence, it may be necessary to litigate the exhaustion issue.